UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NORTH AMERICAN BUILDERS | ) | |
| SUPPLY, INC. | ) | Case No. 25-18572 |
| | ) | |
| Debtor | ) | Honorable Jacqueline P. Cox |
| | ) | |
| | ) | Chapter 11 |

**DEBTOR'S FIRST AMENDED SMALL BUSINESS PLAN OF REORGANIZATION UNDER 11 U.S.C. §1121(e)**

North American Builders Supply, Inc., Debtor herein ("Debtor"), by and through its attorney, proposes the following First Amended Small Business Plan of Reorganization ("Plan") in accordance with Section 1121(a) and (e) of the Bankruptcy Code. On June 30, 2026, an order was entered, pursuant to 11 U.S.C. §1129(e), extending the deadline for the Debtor to obtain confirmation of its Plan to and including September 8, 2026. The Debtor filed another motion to extend the deadline to obtain confirmation of its Plan to and including November 17, 2026. The motion was granted and on September 8, 2026, an order was entered extending the deadline to obtain confirmation of its Plan to and including November 17, 2026.

## INTRODUCTION

On December 3, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). The Debtor is operating its business and managing its financial affairs as Debtor-in-Possession pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this Chapter 11 case. The Debtor is engaged in the retail sale of building materials consisting of lumber, windows, doors, trim, and hardware to commercial and residential builders.

The Debtor is the proponent of the Plan. The Plan provides for distributions to the holders of Allowed Claims from funds realized by the Debtor from post-petition earnings as well as from cash on hand. The Debtor filed a motion to excuse the need for filing a disclosure statement pursuant to 11 U.S.C. §1125(f)(1), which has been continued from time to time and is currently set for hearing on September 15, 2026

**SUMMARY OF PLAN**

The Plan contains eight (8) classes of claims and one (1) class of unclassified claims. The unclassified class of claims consists of administrative expense claims pursuant to 11 U.S.C. §507(a)(2) and will be paid in accordance with 11 U.S.C. §1129(a)(9)(A). The administrative expense claims include the quarterly fees due the U.S. Trustee and the fees and reimbursement of expenses allowed counsel for the Debtor upon notice and application to the Court. The Debtor will continue paying the quarterly fees due the U.S. Trustee until the Court enters a final decree.

Class 1 of the Plan consists of the allowed secured claim of Central Bank Illinois ("Central Bank") to the extent allowed as a secured claim under §506 of the Bankruptcy Code. On or about November 5, 2021, the Debtor executed a promissory note in favor of Central Bank in order to borrow the principal amount of $300,000 ("Loan #64755"). On or about November 8, 2021, the Debtor executed a promissory note in favor of Central Bank in order to borrow the principal amount of $175,000 ("Loan #66492"). On or about November 15, 2021, the Debtor executed a promissory note in favor of Central Bank in order to borrow the principal amount of $55,214 ("Loan #66515"). The notes were secured by security agreements dated October 29, 2020, November 23, 2020, November 8, 2021, and November 15, 2021, whereby the Debtor pledged to Central Bank all of its assets including equipment, inventory, accounts, accounts receivable, a

2013 Freightliner M2-112 Flatbed, 2008 International Series 4300, and a 2006 International Series 4300.. On or about May 13, 2019, February 1, 2024, May 6, 2024, and May 8, 2024, Central Bank recorded UCC financing statements with the Illinois Secretary of State to perfect its security interests in the Debtor's assets. On February 12, 2026, Central Bank filed secured proofs of claim in the amounts of $21,668.61 (Loan #66515), $98,201.84 (Loan #66492), and $341,239.19 (Loan #64755). The Debtor's schedule of assets lists the value of Central Bank's collateral standing as security for the loans as $413,653.66. Accordingly, the Debtor believes that Central Bank has a secured claim of $413,653.66 and an unsecured claim of $47,455.98. The Plan provides for payment of the allowed secured claim of Central Bank in full, with interest at the annual rate of 7.5%, to be paid over a period of seventy-two (72) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $7,152.11.

Class 2 of the Plan consists of the allowed secured claim of OGF Capital LLC ("OGF") to the extent allowed as a secured claim under §506 of the Bankruptcy Code. On or about September 17, 2025, the Debtor and OGF entered into a Factoring and Security Agreement which provided for OGF to purchase from the Debtor certain qualifying accounts receivable in order to immediately fund operations of the Debtor. Central Bank executed a subordination agreement of its interest in the Debtor's accounts receivable in order for the Debtor and OGF to enter into the Factoring and Security Agreement. OGF properly perfected its security interest by filing a UCC financing statement. Subsequent to the filing of the Case, the Debtor filed its motion for approval to maintain and continue with the pre-petition Factoring and Security Agreement and on January 28, 2026, a final order was entered authorizing the Debtor to continue operating under the Factoring and Security Agreement. The Debtor scheduled the amount of OGF's claim in an

unknown amount at the date of filing the Case. OGF did not file a proof of claim. The Debtor believes any amounts owed to OGF at the date of filing of the Case were based upon outstanding amounts due OGF from the Debtor's accounts receivable sold to OGF that had not yet been collected by OGF at the date of filing of the Case. The Debtor is of the opinion that those receivables, if any, have been collected, or will be collected, by OGF. Any amounts due OGF post-petition will be paid pursuant to the Factoring and Security Agreement.

Class 3 of the Plan consists of the allowed unsecured claim of Central Bank Illinois to the extent allowed as an unsecured claim under §502 of the Bankruptcy Code. As referenced above in discussion of Central Bank's secured claim, the Debtor believes Central Bank holds an unsecured claim in the amount of $47,455.98. The Plan provides for payment of the unsecured claim of Central Bank Illinois, without interest, in an amount equal to ten (10%) percent of the allowed claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $79.08.

Class 4 consists of the allowed unsecured claim of Kapitus Servicing, Inc. ("Kapitus") to the extent allowed as an unsecured claim under §502 of the Bankruptcy Code. On January 2, 2026, Kapitus filed a secured claim in the amount of $246,627.64. On or about November 17, 2021, the Debtor executed a Loan Agreement and Security Agreement in favor of Kapitus in the principal amount of $100,000, whereby Kapitus would purchase future receipts of the Debtor. This loan transaction is typically referred to as a merchant cash advance loan whereby the Debtor agreed to repay Kapitus over a term of approximately nine months in daily payments of $803 being debited from Debtor's bank account. Kapitus was given a security interest in the same assets pledged to Central Bank as collateral to secure the debt due Central Bank. Kapitus filed a UCC financing

statement with the Illinois Secretary of State, but subsequent to the filing of Central Bank's UCC financing statement. Since the value of the collateral standing as security for the debt due Central Bank does not exceed the indebtedness due Central Bank, the Debtor submits that there is no collateral standing as security for the debt due Kapitus. Accordingly, Kapitus' claim will be treated as a non-priority, general unsecured claim to be paid pro rata with other general, unsecured claims in Class 7. The Debtor will file an objection to Kapitus' claim to recast the secured claim as an unsecured claim. The Plan provides for payment of the unsecured claim of Kapitus, without interest, in an amount equal to ten (10%) percent of the allowed claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $411.04.

Class 5 consists of the allowed unsecured claim of Wise Consulting LLC. ("Wise") to the extent allowed as an unsecured claim under §502 of the Bankruptcy Code. On February 2, 2026, Wise filed a secured claim in the amount of $18,630.91. On May 29, 2024, Coveted Funding LLC ("Coveted") obtained a judgment against the Debtor in the amount $22,744.36, in the Circuit Court of the 16th Judicial Circuit, Kane County, IL. Prior thereto, the Debtor executed a security agreement in favor of Coveted pledging certain assets that were previously pledged to Central Bank. On or about August 21, 2024, a repayment agreement was entered into between the Debtor and Coveted and an assignment of the claim by Coveted was made to Wise. Since the value of the collateral standing as security for the debt due Central Bank does not exceed the indebtedness due Central Bank, the Debtor submits that there is no collateral standing as security for the debt due Wise. Accordingly, Wise's claim will be treated as a non-priority, general unsecured claim to be paid pro rata with other general, unsecured claims in Class 7. The Debtor will file an objection to

Wise's claim to recast the secured claim as an unsecured claim. The Plan provides for payment of the unsecured claim of Wise, without interest, in an amount equal to ten (10%) percent of the allowed claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $31.05.

Class 6 consists of the allowed unsecured claim of Michael & Deanna Krejci ("Krejci") to the extent allowed as an unsecured claim under §502 of the Bankruptcy Code. On March 7, 2026, Krejci filed a proof of claim in the amount of $23,108, of which $3,800 is claimed as a priority pursuant to 11 U.S.C. §507(a)(7). The Debtor does not believe that the claim is entitled to a partial priority claim and will be filing an objection to disallow the priority portion of the claim. Accordingly, the Krejci's claim will be treated as a non-priority, general unsecured claim to be paid pro rata with other general, unsecured claims in Class 7. The Plan provides for payment of the unsecured claim of Krejci, without interest, in an amount equal to ten (10%) percent of the allowed claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $38.51.

Class 7 consists of the Allowed Unsecured Claims of the remaining creditors to the extent allowed as unsecured claims under §502 of the Bankruptcy Code. The bar date for filing claims was set as March 13, 2026, for non-governmental entities and June 1, 2026, for governmental entities. Based upon the schedules of debts filed by the Debtor and the proofs of claim filed herein, the Debtor believes the total of the unsecured claims is approximately $1,171,418.71. The Plan provides for payment of the Allowed Unsecured Claims, pro rata, without interest, in an amount equal to ten (10%) percent of the allowed claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective

Date of the Plan, in monthly installments of $1,952.36.

Class 8 consists of the shareholder claim of the sole shareholder, Paul McCue ("McCue"). In exchange for a new value contribution of $5,000, McCue will retain his stock ownership in the reorganized Debtor. The Debtor shall offer for sale the shareholder interest of McCue by advertisement in a newspaper of general circulation which will set the auction sale on the date set for confirmation of the Plan. Any offers to purchase the shareholder interest must exceed the new value contribution of McCue by $5,000.

The bar date for filing proofs of claim by governmental entities was June 1, 202. No proofs of claim have been filed by any governmental entities.[1]

Attached hereto as Exhibit A and made a part hereof is a liquidation analysis showing the creditors will receive more under the Plan than they would in a hypothetical liquidation of the Debtor's assets. Attached hereto as Exhibit B and made a part hereof is a projected cash flow and budget showing anticipated income and expenses over the life of the Plan and available net income to make the Plan payments. Attached hereto as Exhibit C and made a part hereof are the Debtor's federal income tax returns for the years 2024 and 2025. Attached hereto as Exhibit D is a summary of the monthly operating reports filed by the Debtor during the course of the case.

**HISTORY OF THE DEBTOR**

The Debtor was incorporated in Illinois on April 24, 2019. The Debtor's sole shareholder and officer is Paul McCue ("McCue"). The Debtor is engaged in the retail sale of building materials consisting of lumber, windows, doors, trim, and hardware to commercial and residential builders. The Debtor commenced its operations in St. Charles, IL, but for the past several years has occupied its current location at 1111 South Bridge St., Yorkville, IL 60560. McCue will

[1] Internal Revenue Service filed a claim on February 10, 2026, in the amount of "0.00".

continue in his role as the Debtor's sole shareholder and officer. This is a relationship-driven business and over the years McCue has developed industry knowledge, vendor relationships, customer relationships, purchasing relationships and his involvement in the day-to-day management of the business is essential to the Debtor's continued operations and feasibility in funding a plan of reorganization.

## EVENTS LEADING TO FILING OF CASE

Over the past few years, several factors led to the filing of the Case. In or around 2024 into 2025, Bluetape, Inc. ("Bluetape") obtained a judgment against the Debtor in the approximate amount of $500,000. Thereafter, Bluetape filed mechanics' lien claims on properties owned by five of the Debtor's largest customers. These lien claims were disputed and although Bluetape released the mechanics' lien claims, the damage was already done as these top five customers ceased doing business with the Debtor. This, in turn, caused the Debtor's sales manager and four salespersons to leave the company. This caused an immediate and significant decline in revenue, customer activity and cash flow for the business. The Debtor's gross sales went from $2,841,964 in 2022 to $1,744,566 in 2023 to $600,408.80 in 2024. The filing of the mechanics' lien claims which caused the top five customers to cease doing business with the Debtor caused the customer base and sales pipeline to be severely restricted and caused uncertainty with the sales force who decided to leave rather than weather the storm.

At the date of filing of the Case, the Debtor was a defendant or judgment debtor in sixteen (16) lawsuits; one was filed in 2022, three were filed in 2023, four were filed in 2024, and eight were filed in 2025. Attached hereto as Exhibit E and made a part hereof is a listing of various lawsuits filed against the Debtor and the disposition at the Petition Date.

Accordingly, under the threat of seizure of the Debtor's assets by certain judgment creditors, the Debtor filed the Chapter 11 case. Since the filing of the case, the business has stabilized its operation at a lower, but more realistic level.

## ARTICLE I
## DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

**1.1** **Administrative Expense:** A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

**1.2** **Allowed Claim:** A "Claim" (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent in the Debtor's bankruptcy schedules filed in this Chapter 11 case, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the provisions of this Plan.

**1.3** **Bankruptcy Code:** Title 11 of the United States Code, Section 101 *et seq*., as amended.

**1.4** **Bankruptcy Court:** The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**1.5** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**1.6** **Chapter 11:** Chapter 11 of the Bankruptcy Code.

**1.7** **Chapter 11 Case:** This case filed by the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.8** **Claim:** The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.9** **Confirmation:** The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.10** **Debtor:** North American Builders Supply, Inc.

**1.11** **Debtor's Estate:** All of the Debtor's "property of the estate" as defined in Section 541 of the Bankruptcy Code.

**1.12** **Debtor in Possession:** North American Builders Supply, Inc.

**1.13** **Effective Date:** The date on which the Order confirming the Plan becomes a Final Order.

**1.14** **Final Confirmation Order:** Final Order confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.15** **Final Order:** (i) An order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek re-argument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, re-argument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, re-argument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for re-argument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, re-argument, reconsideration,

rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

**1.16** **Month:** A calendar month, including the month in which a date or event occurs.

**1.17** **Plan:** This Plan of Reorganization including any amendments or modifications thereto.

**1.18** **Pro-rata:** With respect to any distribution on account of any Claim in the same proportion as the amount of such Claim bears to the aggregate amount of all Claims of its class.

**1.19** **Unclassified Claims**: Claims of the kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code, which Claims shall not be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

Unless otherwise defined in this Plan, the words and phrases used herein shall have the meanings ascribed to them in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II
## UNCLASSIFIED CLAIMS

The following Unclassified Claims exist under the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code:

**2.1** **Administrative Claims:** Administrative Claims shall consist of Allowed Claims for Administrative Expenses as well as Claims arising under Sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code.[2] These Claims also include the quarterly fees payable to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6).

[2] Since the Debtor's Chapter 11 Case was commenced as a voluntary proceeding, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

3.1 **Class 1:** The claim of Central Bank Illinois to the extent allowed as a Secured Claim under §506 of the Bankruptcy Code.

3.2 **Class 2:** The claim of OGF Capital LLC to the extent allowed as a Secured Claim under §506 of the Bankruptcy Code.

3.3 **Class 3:** The claim of Central Bank Illinois to the extent allowed as an Unsecured Claim under §502 of the Bankruptcy Code.

3.4 **Class 4**: The claim of Kapitus Servicing, Inc. to the extent allowed as an Unsecured Claim under §502 of the Bankruptcy Code.

3.5 **Class 5:** The claim of Wise Consulting LLC to the extent allowed as an Unsecured Claim under §502 of the Bankruptcy Code.

3.6 **Class 6:** The claim of Michael & Deanna Krejci to the extent allowed as an Unsecured Claim under §502 of the Bankruptcy Code.

3.7 **Class 7:** The Allowed Claims of general unsecured creditors ("Unsecured Claims") to the extent allowed under §502 of the Bankruptcy Code.

3.8 **Class 8:** This Claimant is the shareholder claim of the sole shareholder, McCue. In exchange for a new value contribution of $5,000, to be paid in monthly installments over sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, McCue will retain his stock ownership in the reorganized Debtor. The Debtor shall offer for sale the shareholder interest of McCue by advertisement in a newspaper of general circulation which will set the auction sale on the date set for confirmation of the Plan. Any offers to purchase the shareholder interest must exceed the new value contribution of McCue by $5,000.

## ARTICLE IV
## PAYMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

Under the terms of the Plan, Unclassified Claims are unimpaired and shall be paid as follows:

**4.1** **Administrative Claims**: Except as expressly provided herein and except as may be agreed to by the holder of each Allowed Administrative Claim, holders of Allowed Administrative Claims shall be paid on the Effective Date in cash in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, as follows, unless the holder of an Administrative Claim agrees to a different treatment:

> Each holder of an Allowed Administrative Claim of the kind specified in Section 507(a)(2) of the Bankruptcy Code will receive on account of such Claim, cash equal to the allowed amount of such Claim, on the Effective Date except that post-petition creditors of the Debtor will be paid according to the terms under which the debt was incurred; and provided, however, that all Administrative Claims with respect to the payment of any professional person shall remain subject to and be paid in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules and the Final Order of the Bankruptcy Court.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Classes 1 through 7 (except Class 2) are impaired.

**5.1** **Class 1**: The claim in Class 1 consists of the Allowed Secured Claim of Central Bank Illinois in the amount of $413,653.66. In full satisfaction, settlement, release, and discharge of

and in exchange for the Allowed Secured Claim in Class 1, the Allowed Secured Claim will be paid in full, with interest at the annual rate of 7.5%, in monthly installments over a period of seventy-two (72) months, commencing thirty (30) days after the Effective Date of the Plan. The monthly payment is $7,152.11. This Class is impaired.

**5.2** Class 2: The claim in Class 2 consists of the Allowed Secured Claim of OGF Capital LLC. In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Secured Claim in Class 2, OGF Capital LLC will be paid pursuant to the Factoring and Security Agreement entered into on or about September 17, 2025. This Class is unimpaired under the Plan.

**5.3** Class 3: The claim in Class 3 consists of the Allowed Unsecured Claim of Central Bank Illinois. In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Unsecured Claim in Class 3, Central Bank Illinois will be paid, without interest, an amount equal to ten (10%) percent of the allowed unsecured claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $79.08. This Class is impaired under the Plan. The total amount of the claim in Class 3 is $47,455.98.

**5.4** Class 4: The claim in Class 4 consists of the Allowed Unsecured Claim of Kapitus Servicing, Inc. In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Unsecured Claim in Class 4, Kapitus Servicing, Inc. will be paid, without interest, an amount equal to ten (10%) percent of the allowed unsecured claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $411.04. This Class is impaired under the Plan. The total amount of the claim in Class 4 is $246,627.64.

**5.5** **Class 5:** The claim in Class 5 consists of the Allowed Unsecured Claim of Wise Consulting LLC. In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Unsecured Claim in Class 5, Wise Consulting LLC will be paid, without interest, an amount equal to ten (10%) percent of the allowed unsecured claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $31.05. This Class is impaired under the Plan. The total amount of the claim in Class 5 is $18,630.91.

**5.6** **Class 6:** The claim in Class 6 consists of the Allowed Unsecured Claim of Michael & Denna Krejci. In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Unsecured Claim in Class 6, Michael & Deanna Krejci will be paid, without interest, an amount equal to ten (10%) percent of the allowed unsecured claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $38.51. This Class is impaired under the Plan. The total amount of the claim in Class 6 is $23,108.

**5.7** **Class 7:** The claims in Class 7 consist of the Allowed Unsecured Claims of general, unsecured creditors not identified in other classes of claims in this Plan. In full satisfaction, settlement, release, and discharge of and in exchange for the Allowed Unsecured Claims in Class 7, the Allowed Unsecured Claims. will be paid, pro rata, without interest, in an amount equal to ten (10%) percent of the allowed unsecured claim in monthly installments over a period of sixty (60) months, commencing thirty (30) days after the Effective Date of the Plan, in monthly installments of $1,952.36. This Class is impaired under the Plan. The total amount of the claims in Class 7 is estimated to be $1,171,418.71.

**5.8** Class 8: This Claimant is the shareholder claim of the sole shareholder, McCue. In exchange for a new value contribution of $5,000, , McCue will retain his stock ownership in the reorganized Debtor. The Debtor shall offer for sale the shareholder interest of McCue by advertisement in a newspaper of general circulation which will set the auction sale on the date set for confirmation of the Plan. Any offers to purchase the shareholder interest must exceed the new value contribution of McCue by $5,000.

## ARTICLE VI
## IMPLEMENTATION OF PLAN

**6.1** The Debtor intends to continue operating its business to earn income from post-petition earnings sufficient to make the Plan payments. The Debtor generates revenue by retail sales of building materials consisting of lumber, windows, doors, trim, and hardware to commercial and residential builders.

**6.2** In order for the Plan to be deemed accepted, creditors that hold at least two-thirds in amount and one-half in number of allowed claims in an impaired class that are actually voted must accept the Plan.

**6.3** Upon Confirmation, the Debtor shall be vested with its assets, subject only to the terms and conditions of this Plan. The Debtor shall be entitled to continue to operate and manage its financial affairs without further Order of this Court as set forth in the Plan.

**6.4** Notwithstanding Confirmation, an injunction under Sections 362 and 524 of the Bankruptcy Code shall remain in effect to prevent any party from enforcing claims, including, but not limited to, any state court litigation, against the Debtor and its assets except in a manner provided for under the terms and conditions of this Plan. This injunction shall remain in full force and effect to prevent said actions until all distributions have been made in accordance

with the terms and conditions of the Plan or until further order of Court. The provisions contained herein are applicable so long as the Debtor is in full compliance with the provisions of any confirmed Plan.

**6.5** Management of the Debtor will remain unchanged after Confirmation of the Plan and Paul McCue shall be the disbursing agent, on behalf of the Debtor, for the payments required under the Plan. In the unlikely event McCue does not retain his stock ownership interest in the Debtor, it is likely that the Debtor will not continue in business and its assets will be liquidated for the benefit of its lone secured creditor, Central Bank. McCue has built relationships with the Debtor's clientele since the inception of the business. If McCue is no longer the shareholder of the Debtor, it is the Debtor's opinion that the business relationships will dry up and the Debtor will be unable to complete Plan payments as required herein.

**6.6** After Confirmation of the Plan, the Debtor will operate its business in the ordinary course. Payments to creditors pursuant to the Plan will be made from funds realized from post-petition earnings, from existing cash deposits, and cash resources of the Debtor.

**6.7** The Debtor will have the right to make any distribution to creditors earlier than required by the Plan, without penalty.

**6.8** The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim. The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims shall be deemed released and discharged.

**6.9** Quarterly payments to the U.S. Trustee will continue to be made by the Debtor until the Case is converted, dismissed or closed.

## ARTICLE VII
## EXECUTORY CONTRACTS

**7.1** Any executory contracts or unexpired leases not previously assumed or rejected shall be rejected.

## ARTICLE VIII
## BANKRUPTCY COURT'S RETENTION OF JURISDICTION

**8.1** The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i) hear and determine applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) hear and determine objections to Claims filed in this Chapter 11 case; (iv) resolve disputes regarding interpretation of this Plan; (v) allow Administrative Claims; (vi) enter Orders to further consummation of the Plan; (vii) approve modifications of the Plan upon motions brought before the Bankruptcy Court in accordance with Section 1127 of the Bankruptcy Code; (viii) hear and determine all applications and motions pending before the Bankruptcy Court on the date of Confirmation or such other matters as are commenced after Confirmation of the Plan; (ix) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as may be necessary; (x) enforce terms of the Plan; (xi) hear and determine all matters brought by the Debtor under this Plan; (xii) enter an Order concluding and terminating this Chapter 11 case; and (xiii) hear and determine any and all matters brought before the Bankruptcy Court by the Debtor after Confirmation.

## ARTICLE IX
## INVALIDATION OF LIENS AND DISCHARGE

**9.1** The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan. Subject to the provisions contained herein, the distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Claims against any of the assets or properties of the Debtor and Debtor's Estate including, but not limited to, the claims asserted in any state court litigation. Except as stated herein or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any lien or Claim against the Debtor or its property. Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: discharge the Debtor from all Claims, demands, liabilities, other debts and interests that arose on or before the Petition Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim or Interest based on such debt or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (C) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan. This provision of the Plan is intended to include the full breadth of the discharge provided for and permitted under Section 1141 of the Bankruptcy Code.

## ARTICLE X
## INTEREST AND PENALTIES

**10.1** Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after December 3, 2025, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest

or penalty allowed for payment pursuant to the Plan.

## ARTICLE XI
## CONFIRMATION OF PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE

11.1 To the extent necessary pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8) are met.

## ARTICLE XII
## UNCLAIMED PROPERTY

12.1 In the event that any distribution made to a claimant by the Debtor under this Plan remains unclaimed ninety (90) days after such distribution is made, this distribution shall become property of the Debtor and shall not be recouped by any claimant in subsequent distributions. Once the distribution becomes unclaimed under this provision of the Plan, the claimant shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE XIII
## GENERAL PROVISIONS

13.1 **Rules of Construction**. The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

13.2 **Definitions**. A term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

13.3 **Amendment and Modification**. The Debtor may alter, amend or modify the Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

**13.4** **<u>Severability</u>**. Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

**13.5** **<u>Successors and Assigns</u>**. The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of any such person or entity.

**13.6** **<u>Headings</u>**. The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

**13.7** **<u>Effect of Appeals</u>**. Unless the Confirmation Order is stayed pending appeal, the Debtor may consummate this Plan notwithstanding the pendency of an appeal from the Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002, 8003, 9023 or 9024.

**13.8** **<u>Debtor's Corporate Existence.</u>** The Debtor's corporate existence shall survive and be unaffected by Confirmation of this Plan except to the extent provided in the Plan.

**13.9** **<u>Computation of Time</u>**. Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**13.10** **<u>Insurance Preservation</u>**. Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other person.

**13.11** **<u>Assignment of Licenses and Insurance</u>**. Any and all licenses of the Debtor and any and all insurance policies, contracts, rights and coverages shall be deemed assigned to and

for the benefit of the Debtor upon Confirmation of the Plan

**13.12** **Terms Binding**. On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtor in connection with the Plan, shall be binding upon the Debtor, all creditors and shareholders and all other entities that are affected in any manner by the Plan. All agreements, instruments and other documents filed in connection with Plan shall have full force and effect, and shall bind all parties thereto as of the Final Confirmation Order.

**13.13** **Inconsistencies**. In the event that there is any inconsistency between the Plan, any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

**13.14** **Compliance With Applicable Law**. It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all applicable laws and any rules and regulations promulgated thereunder. If the Debtor concludes that the Plan may not comply with applicable law, then in such event the Debtor intends to amend the Plan in such respect as it deems necessary to bring the Plan into compliance therewith.

**13.15** **Tax Consequences**. At this time, it is uncertain as to what tax consequences, if any, may exist under the Plan with respect to the Debtor and its creditors.

Respectfully submitted,

North American Builders Supply, Inc., Debtor

By: /s/ Joel A. Schechter
Its Attorney

Joel A. Schechter
Attorney No. 3122099
Law Offices of Joel A. Schechter
53 West Jackson Blvd., Suite 860
Chicago, IL 60604; 312-332-0267; joel@jasbklaw.com